David A. SMITH, Petitioner,

v.

T. M. KEOHANE and Andy Coats, District Attorney, Oklahoma County District Court, Oklahoma City, Respondents.

No. CIV-79-914-D.

United States District Court,
W. D. Oklahoma.

Dec. 31, 1979.

David A. Smith pro se.

Larry D. Patton, U. S. Atty., by Kathleen Flanagan, Asst. U. S. Atty., Oklahoma City, Okl., for respondent Keohane.

Andrew M. Coats, Dist. Atty., by Robert I. Owen, Asst. Dist. Atty., Oklahoma City, Okl., for respondent Coats.

## OPINION AND ORDER

DAUGHERTY, Chief Judge.

■ Petitioner, an inmate at the Federal Correctional Institution, El Reno, Oklahoma, has filed this action, pro se, denominating it a petition for a writ of habeas corpus by a person attacking a state detainer. The pleadings, however, have made it apparent that the relief sought by petitioner is in fact in the nature of injunctive relief. In accordance with *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), requiring liberal construction of pro se pleadings such as these, the petition will be addressed as seeking injunctive relief, and will not be dismissed for failure to comply with the applicable provisions of the Interstate Agreement on Detainers.

Petitioner was arrested by Poteau, Oklahoma authorities on November 14, 1978, as a fugitive from justice from the State of Arkansas. On December 7, 1978, pursuant to a writ of habeas corpus ad prosequendum, he was transported to Oklahoma City to answer to a two-count indictment charging violation of 18 U.S.C. §§ 2312 and 2313. On February 2, 1979, following a plea of guilty to a single count, the other being dismissed, petitioner was sentenced in this court to imprisonment for a period of three (3) years. It was further ordered "that the said sentence of confinement imposed herein shall run consecutive to any time due to the State of Oklahoma." Immediately following the sentencing in this court, petitioner was released to Oklahoma County authorities pursuant to a writ of habeas corpus ad prosequendum. On March 12, 1979, pursuant to pleas of guilty, petitioner was sentenced in Oklahoma County District Court on each of two charges of concealing stolen property to two (2) years, the first year to be served in the penitentiary and the remaining year to be suspended. The two (2) state sentences were to run concurrently with each other. Following the sentencing in Oklahoma County District Court, petitioner remained in custody in the Oklahoma County Jail until April 17, 1979, when he was transported by U. S. Marshals back to Poteau, Oklahoma and once again into the custody of state authorities. In the interim, however, on February 16, 1979, the charge upon which petitioner was originally arrested had been dismissed. On May 17, 1979, the LeFlore County authorities so advised the U. S. Marshals. Petitioner was thereafter held in federal custody in Muskogee, Oklahoma until June 12, 1979, when he was committed to the Federal Correctional Institution, El Reno, Oklahoma.

The federal correctional authorities have now concluded that petitioner should be serving his state sentence, have so notified the Oklahoma Department of Corrections, and desire to transfer petitioner to state custody. On August 28, 1979, petitioner filed a motion to dismiss for loss of jurisdiction in the District Court of Oklahoma County in the two cases in which he was sentenced in that court, alleging, generally, that the State of Oklahoma should have retained custody of the defendant after his sentencing in Oklahoma County District Court and that when they turned him over to federal authorities, they forfeited and surrendered their jurisdiction over him with respect to the state convictions for which he had been sentenced. To date, petitioner alleges that no action has been taken by the District Court on his motion.

■ Petitioner makes it quite clear in his response to respondents' motions to dismiss, that he desires this court to prevent his being transferred to state custody. He asserts that he should be held at the Federal Correctional Institution, El Reno, Oklahoma, until completion of his federal sentence. He further states that if he is retained in federal custody, this will allow him time to exhaust his state court remedies. Petitioner also desires that this court order the records department at the Federal Correctional Institution to cause petitioner's records to show that his federal sentence is presently running and that it cannot be arbitrarily stopped and restarted by the Bureau of Prisons.

It is clear that, as asserted by petitioner and concurred in by the federal correctional authorities, a mistake was made by state authorities when petitioner was released to federal custody after he had been sentenced in the District Court for Oklahoma County. Federal custody of petitioner was originally obtained by "borrowing" him from state custody for purposes of prosecution. That such custody was subject to the primary custody rights of the state was clearly recognized by this court in its order, upon sentencing, "that the said sentence of confinement imposed herein shall run consecu-

tive to *any* time due to the State of Oklahoma." [emphasis supplied] Although at the time of federal sentencing, no state sentence had been imposed, this court clearly recognized that any subsequent sentence imposed by state authorities, from whom petitioner had been "borrowed," would be served prior to the service of the federal sentence. *Anderson v. United States*, 405 F.2d 492 (10th Cir. 1969), cert. denied, 394 U.S. 965, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

Cases relied upon by petitioner for the proposition that, once commenced, a federal sentence must be served continuously and without interruption, are cases where a prisoner was released from custody, either by mistake or upon execution of a writ habeas corpus ad prosequendum to another sovereignty, and where no effort was made to correct the mistake or reacquire custody of the prisoner for a substantial period of time. In those circumstances, where the prisoner has been freed or has a reasonable expectation of freedom and has, or has attempted to, reestablish himself in the community, and where the interruption of his sentence is through no fault of his own, it has been held that his sentence continues to run although not in federal custody. *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930); *Lanier v. Williams*, 361 F.Supp. 944 (E.D.N.C.1973). The circumstances present in those cases, however, are not present here.

In *Cox v. United States*, 551 F.2d 1096 (7th Cir. 1977), a federal prisoner brought an action to obtain credit against his federal sentence for time served on a state conviction. Plaintiff was serving a state sentence and was released on bond pending the outcome of a collateral attack on his conviction. He was arrested, convicted and sentenced on federal charges, the sentence "to be served consecutive to any other sentence," and was placed in a federal penitentiary to begin serving the federal sentence. His collateral attack on the state conviction was subsequently denied and he was returned to state custody, where he served the remainder of his state sentence. At the conclusion of his state sentence, he was recommitted to federal custody to serve the remainder of his federal sentence. He

sought a determination that the running of his federal sentence was not interrupted by his transfer to state authorities for the completion of his state sentence. He sought that determination on the grounds first, that 18 U.S.C. § 3568 prohibited the interruption of his federal sentence; second, that the interruption of his federal sentence violated a common law rule prohibiting imprisonment by installments [citing *White v. Pearlman*, supra]; and, third, that the Attorney General lacked authority to release him from federal custody for the purpose of completing his state sentence. The relief sought was denied on each of the three grounds asserted.

The Court of Appeals, as to the first assertion, cited *United States v. Liddy*, 510 F.2d 669 (D.C.Cir.1974) cert. denied 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975), holding that section 3568 does not require uninterrupted running of a federal sentence after it has begun. The court continued:

"Moreover, even if we were to conclude that section 3568 does have some force in that respect, we would not hold that it prohibits interruption under the circumstances of this case. The running of plaintiff's federal sentence was interrupted to effectuate the trial judge's order that the federal sentence be 'consecutive to any other sentence.' We have recognized that section 3568 did not abolish or change the inherent power of the trial court to impose consecutive sentences. *McKee v. United States*, 289 F.2d 557 (7th Cir. 1961). To hold that section 3568 prohibited release of plaintiff after his federal sentence had begun would permit the section to frustrate the trial judge's power to impose a consecutive sentence under the circumstances of this case."

As to plaintiff's assertion based upon *White v. Pearlman*, supra, the court stated:

"Insofar as interruption of plaintiff's federal sentence postponed the date on which he would ultimately complete his imprisonment, it was entirely consistent with the consecutive nature of the sentence imposed. Thus, plaintiff was no more deprived of his ultimate expectation of freedom by interruption of his federal sentence than if he had been turned over to the Kansas authorities immediately after sentence was imposed to complete the service of his state sentence. The fact that plaintiff's state sentence had been suspended pending the outcome of his collateral attack may not serve to defeat the federal trial judge's power to impose a consecutive sentence."

In response to plaintiff's third assertion, the court cited 18 U.S.C. § 4085, which grants express statutory authority to the Attorney General to transfer a federal prisoner convicted of a felony in a state court to that state's penal institutions. The court reiterated its previous determination that the release of the plaintiff to state authorities was necessary to effectuate the trial judge's order that the federal sentence be consecutive to *any* other sentence.

Petitioner's contentions herein indirectly, if not directly, appear to question the authority of the federal and state governments to determine the order in which he is to serve sentences imposed by each. In *Lionel v. Day*, 430 F.Supp. 384, (W.D.Okl. 1976), this court made the following statement:

"The petitioner has no standing in this proceeding to challenge custody arrangements with federal and state authorities. *Chunn v. Clark*, 451 F.2d 1005 (CA 5 1971); *Stripling v. United States*, 172 F.2d 636 (CA 10 1949). The question of jurisdiction and custody over prisoners is one of comity between governments and not a personal right of prisoners. *Jones v. Taylor*, 327 F.2d 493 (CA 10 1964), cert. denied, 377 U.S. 1002, 84 S.Ct. 1937, 12 L.Ed.2d 1051; *Wall v. Hudspeth*, 108 F.2d 865 (CA 10 1940). When a person violates the criminal statutes of both the federal and state governments he may not complain of the order in which he is tried or punished for such offenses, and the interested sovereigns may arrange the order of trial and punishment according to their convenience. *Vanover v. Cox*, 136 F.2d 442 (CA 8 1943)."

Denial of the petition herein will not foreclose petitioner from continuing to urge the position asserted in his motion filed with the District Court for Oklahoma Coun-

ty, nor will it prevent petitioner from obtaining credit, as appropriate under federal law and regulations, for time served against his federal sentence.

Based upon the foregoing, the petition will be denied and this action dismissed.

IT IS SO ORDERED.