Dewaine Everett BROWN,
Petitioner–Appellee,

v.

Jim BRITTAIN, Superintendent, Arkansas Valley Correctional Facility,
Respondent–Appellant.

No. 88SA150.

Supreme Court of Colorado,
En Banc.

May 15, 1989.

No Appearance for petitioner-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Marleen Langfield, Asst. Atty. Gen., Denver, for respondent-appellant.

VOLLACK, Justice.

The question in this case is whether a prisoner who was mistakenly released before serving a complete sentence is entitled to have credited against his sentence the time he subsequently served in another state for convictions unrelated to the original sentence. The Crowley County District Court held that Dewaine Everett Brown was entitled to credit against his Colorado sentence for time he served in Louisiana after he was mistakenly released. We reverse.

I.

Brown was sentenced on March 30, 1981 by the Arapahoe County District Court to a term of seven years in the Department of Corrections plus one year of parole for an aggravated robbery conviction to run concurrently with a four year sentence plus one year parole for second degree kidnapping. Brown had been in custody for the previous 357 days in the Denver County Jail. Following sentencing, he was returned to the county jail. He was transferred to the Denver City Jail on May 14, 1981, ostensibly in preparation for his transport to the Department of Corrections.

On May 16, 1981, Brown was mistakenly released rather than transported to the Department of Corrections.[1] Brown neither

---

1. Brown testified at the habeas corpus hearing to the following events on the day he was mistakenly released:

Q All right. And how long had you been at the Denver City Jail at that time?
A Probably two days.
Q Okay, and on direct examination you said they came to you and told you you were released and you left?
A Asked me my Social Security number and my name and address, and my parents' names,—
Q Okay.
A —and a pink sheet of paper, and I asked them where was I going, and the officer's direct words, he stated, "You are going to the bricks." I said, "What?" I said, "Arapahoe

caused nor attempted to correct the mistaken impression that he was entitled to immediate release. Two days later, Brown left Colorado and went to Louisiana.

Brown was apprehended by police in Louisiana on June 27, 1981 and charged with aggravated robbery, possession of stolen property, resisting arrest, escape, and damage to property. On July 10, 1981, Colorado authorities discovered that Brown had been mistakenly released, and a bench warrant was issued for his arrest. The bench warrant was lodged as a detainer against Brown in Louisiana.

Brown was ultimately convicted in Louisiana and was sentenced to the Louisiana Department of Corrections in September 1981. He was paroled from the Louisiana Department of Corrections on December 10, 1986, and was promptly taken into custody pursuant to the July 1981 detainer. Brown was returned to the Colorado Department of Corrections on December 17, 1986, to resume his March 1981 sentences. He received no credit for time during which he was mistakenly released.

Brown sought habeas corpus relief with the Crowley County District Court in February 1988. Following a hearing, the district court held that Brown was entitled to credit for the time he was at liberty because he was not "at fault" as the term was used in *White v. Pearlman,* 42 F.2d 788 (10th Cir.1930). The district court noted that *Pearlman* has been cited with approval by the court of appeals in *People v. Incerto,* 38 Colo.App. 390, 557 P.2d 1217

(1976), and *People v. Battle,* 742 P.2d 952 (Colo.App.1987), for the proposition that a prisoner who is mistakenly released through no fault of his own is entitled to credit for the time he was at liberty. The district court stated that the term "at fault" in *Pearlman* "means something more than remaining silent. It connotes action rather than inaction." The court reasoned that, given a "prisoner's schooling in his right to remain silent as he travels through the judicial system," it would be

> too much to expect a prisoner to be able to distinguish those situations when he may safely remain silent from those in which silence operates to his peril. Is a defendant obligated to speak up when he knows the prosecutor is making a mistake in fact which, if unchallenged, will lead to his release? Or is he obligated to correct the record made by the People even though it will be against his interest and may lead to or extend his incarceration? When is he to speak up and when is he to shut up?

The district court concluded that the time from May 16, 1981 to December 17, 1986 should be credited against Brown's March 30, 1981 aggravated robbery sentence in Colorado because Brown was not "at fault" within the meaning of *Pearlman.* Because he could not have been incarcerated past March 1, 1988 under the March 1981 aggravated robbery and kidnapping convictions, Brown was ordered released. This appeal followed.[2]

---

County isn't going to pick me up," he said, "No, you are going home."

Q All right.

A —they put me on the elevator, I went downstairs on the elevator, and there was another officer once you come downstairs on the elevator.

Q Uh huh.

A She also had a copy of the charges which I had been held in the City Jail for,—

Q Okay.

A —along with your copy. I handed my copy and I stood there at the desk, and she said, "What are you waiting for?" I said, "Well, what am I supposed to do?" and she said, "You can leave." I said, "Through the door, here?" and she said, "Yes."

Q And so you left?

A And so I left.

Q Okay, and does that explain to the Court fully the circumstances surrounding your release from the Denver City Jail?

A Yes, it does.

**2.** Although the prosecution states no jurisdictional basis for this appeal, jurisdiction is present under section 16–12–102(1), 8A C.R.S. (1986), which permits the prosecution to appeal any decision of the trial court in a criminal case upon any question of law.

The prosecution filed its notice of appeal on May 13, 1988, pursuant to the former C.A.R. 4(b)(2), which permitted prosecutorial appeals to be filed in the supreme court. Effective August 1, 1988, C.A.R. 4(b)(2) was amended to require such appeals to be filed in the court of appeals. *See People v. Anderson,* 773 P.2d 542, 543 n. 1 (Colo.1989).

## II.

The prosecution argues that the district court erred in crediting Brown with the time he served in Louisiana after being mistakenly released from the Denver City Jail because the district court failed to consider whether reincarceration would be inconsistent with fundamental principles of liberty and justice. We agree.

Two theories have been recognized to permit a prisoner who was mistakenly released through no fault of his own to receive credit against his sentence for the time he was at liberty. Both theories are grounded in the due process requirement that state action must be consistent with "fundamental principles of liberty and justice." *Buchalter v. New York*, 319 U.S. 427, 429, 63 S.Ct. 1129, 1130, 87 L.Ed. 1492 (1943). The first theory is that a prisoner should not be required to serve his sentence in installments. *See White v. Pearlman*, 42 F.2d 788, 789 (10th Cir.1930); *see also Watson v. Enslow*, 183 Colo. 435, 440, 517 P.2d 1346, 1349 (1974) (Colorado had no authority under Uniform Criminal Extradition Act to order extradition to California of prisoner paroled from Colorado prison eight years previously). The second theory is that a failure to attempt to regain custody of the prisoner within a reasonable time constitutes a waiver of jurisdiction over the prisoner. *See Shields v. Beto*, 370 F.2d 1003, 1004 (5th Cir.1967) (twenty-eight year delay in executing sentence after prisoner was extradited back to original state); *see also Lanier v. Williams*, 361 F.Supp. 944, 947 (E.D.N.C.1973) (five year delay in executing sentence while prisoner was at liberty).

The record shows that the Colorado Department of Corrections did not delay its attempt to regain custody of Brown for an unreasonable time, so the second theory for permitting Brown to receive credit for time at liberty is not present. The question that remains is whether he is entitled to credit for time at liberty under the first theory.

### A.

*White v. Pearlman*, 42 F.2d 788 (10th Cir.1930), is the leading case on credit for time at liberty due to mistaken release from prison. In *Pearlman*, a prisoner was sentenced to a five year federal term in Texas on March 17, 1925. The Texas warden mistakenly believed Pearlman had received a three year sentence. On June 5, 1926, the warden told Pearlman that his term would expire on July 5, 1926, and that he would be released at that time. Pearlman told the warden that there was some mistake because he had received a five year sentence. Despite his protest, Pearlman was discharged on July 5, 1926. He returned to his home state. Two years later, Pearlman learned that he was wanted in Texas because of his mistaken 1926 discharge. He returned voluntarily to Texas and was committed to a prison in Kansas. He sought habeas corpus relief from the Kansas prison after he would have been entitled to release had his sentence continued to run while he was at liberty.

The federal district court granted Pearlman's habeas corpus petition, and the Tenth Circuit Court of Appeals affirmed the judgment of the district court. It held that where a prisoner is discharged from a penal institution "without any contributing fault on his part" and without violating the terms of parole, his sentence "continues to run while he is at liberty." 42 F.2d at 789 (citations omitted). The Tenth Circuit found that Pearlman was not only "without fault," he was in essence ejected from the Texas penitentiary despite his protests that a mistake was being made. Under those circumstances, the Tenth Circuit concluded that the sentence ran during the two years he was at liberty. *Id.*

The Tenth Circuit, however, expressly declined to consider "whether a prisoner, who knows a mistake is being made and says nothing, is at fault" for purposes of having his sentence run while he is at liberty. *Id.* That issue is now squarely before us.

### B.

Many courts have cited *Pearlman* for the proposition that a prisoner who says nothing when mistakenly released is not

"at fault," with the result that the prisoner's sentence ran during the time he was at liberty. *Green v. Christiansen,* 732 F.2d 1397, 1400 (9th Cir.1984); *Lanier v. Williams,* 361 F.Supp. 944, 947 (E.D.N.C. 1973); *Ex parte Agee,* 474 So.2d 161, 163 (Ala.1985); *Giles v. State,* 462 So.2d 1063, 1064 (Ala.Crim.App.1985); *People v. Battle,* 742 P.2d 952, 953–54 (Colo.App.1987); *People v. Incerto,* 38 Colo.App. 390, 393, 557 P.2d 1217, 1220 (1976); *Carson v. State,* 489 So.2d 1236, 1238 (Fla.App.1986). These cases, however, fail to recognize that *Pearlman* expressly refused to decide whether a prisoner who says nothing when mistakenly released is "at fault" for purposes of deciding whether he should receive credit for the time he was at liberty. Nor do these cases provide an independent rationale to support the conclusion that a prisoner is entitled to receive credit for time at liberty when mistakenly released. In short, these cases rely on *Pearlman* for a proposition *Pearlman* never decided.

### C.

The United States District Court for the District of Columbia, in *United States v. Merritt,* 478 F.Supp. 804 (D.D.C.1979), has provided perhaps the most cogent analysis to date for deciding whether the sentence of a prisoner who remained silent while being mistakenly released continues to run while the prisoner is at liberty.

> A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted— the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his reincarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.'"

*Id.* at 807 (citation omitted).

The facts in *Merritt* are instructive to this case. The prisoner pled guilty in federal court to bank larceny and received a one to three year sentence to run consecutively with a sentence the prisoner was then serving in Maryland. The federal sentence was lodged as a detainer with Maryland prison officials. The prisoner tried three times without success to find out whether federal marshals intended to execute the detainer. The Maryland prison officials received a memorandum from the federal marshal's office saying that no action would be taken on the detainer until the office was notified that the prisoner was to be released from the Maryland prison. The prisoner was paroled from the Maryland prison without notice to the federal marshal's office. Although the prisoner remained silent when released, he returned to the community, married, fathered one child and adopted a partially handicapped child, became an active member of his local church, and became a part owner of a construction company. *Id.* at 806. He demonstrated "exceptional adjustment and progress" in his return to society. *Id.* at 808 (footnote omitted).

Three years later, the paroled prisoner was arrested on the outstanding federal detainer. He moved to vacate his sentence on the ground that his federal sentence ran from the time he was released by the Maryland officials.

The district court vacated his federal sentence. It noted that the prisoner tried three times to have his detainer status clarified, and each time received either indifference or affirmative declarations from the federal marshal that the detainer would not be served. The court found it "wholly unreasonable to ascribe fault to this defendant because he did not, after that release, continue to badger the authorities to execute the detainer against him." *Id.* at 807. The court also found that the paroled prisoner's subsequent conduct in returning to society was so exemplary that reincarceration would be "inconsistent with fundamental principles of liberty and justice." *Id.* at 808 (citing *Piper v. Estelle,* 485 F.2d 245, 246 (5th Cir.1973)).

Other jurisdictions have employed an analysis similar to that in *Merritt* and refused to give credit for time at liberty

simply because the prisoner remained silent while being mistakenly released through no fault of his own. In *Louisiana v. Kline*, 475 So.2d 1093 (La.1985) (per curiam), a prisoner who remained silent while being mistakenly released was given credit for time at liberty because the prisoner "had no part in securing his release" and because the sheriff and district attorney took no action for eighteen months while the prisoner "reestablished himself in the community, obtained work, and avoided any further problems with the authorities." *Id.* Under those circumstances, the Louisiana Supreme Court found that reincarceration would be inconsistent with fundamental principles of liberty and justice.

In *United States v. Martinez*, 837 F.2d 861 (9th Cir.1988), a prisoner who remained silent while being mistakenly released after his appeals failed sought to vacate his sentence because the authorities failed to order Martinez' return for seven and one-half years, because Martinez was not responsible for his mistaken release, and because Martinez during the time he was at liberty had led an exemplary life. The district court ordered Martinez to recommence serving his original sentence. The Ninth Circuit Court of Appeals affirmed the judgment of the district court on the ground that Martinez' claim for credit for time at liberty was premature because he failed to show that he had pursued administrative remedies through the penal system. *Id.* at 865. The Ninth Circuit found significant, however, that Martinez' mistaken release was not his fault, and that he not only made no attempt to flee when he was released, he returned to his original address and resumed his original job.

In *In re Messerschmidt*, 104 Cal.App.3d 514, 163 Cal.Rptr. 580 (1980), a prisoner who remained silent while being mistakenly released through no fault of his own was denied credit for the time he was at liberty. During the time he was at liberty he served a sentence for petty theft and was under investigation for other criminal activity. The California Court of Appeal stated:

Petitioner relies on a series of federal cases (*White v. Pearlman*, 10 Cir., 42 F.2d 788; *Lanier v. Williams*, D.C., 361 F.Supp. 944; and *Shelton v. Ciccone*, 8 Cir., 578 F.2d 1241) which hold that in certain factual situations elementary principles of due process demand that a mistakenly released prisoner receives credit against his prison term for the time he has been erroneously at large. In these cases due process is interpreted to mean fundamental fairness and fair play and governs situations in which the mistakenly released prisoner peacefully reestablishes himself as a productive member of the community only to have his good works destroyed by reincarceration after many years.

We have no argument with the rationale of the cases on which petitioner relies. However, we decline to distort that rationale into a blanket rule under which every prisoner mistakenly released from confinement is entitled to credit for time he remains free. Unfortunately for the petitioner, the facts of this case do not bring him within the principles of fundamental fairness of fair play envisioned in the cases on which he relies.

104 Cal.App.3d at 516, 163 Cal.Rptr. at 581.[3] Although the law in this area is not

---

**3.** The court drew two hypothetical situations that show when fundamental fairness requires that a mistakenly released prisoner receive credit for time at liberty:

Prisoner One when mistakenly released, returns to his home and family, and, over a prolonged period of time, becomes a respected, productive, law-abiding member of society. He violates no law, is gainfully employed, supports his family, pays his bills and his taxes, is active in community affairs. Then the prison officials discover their mistake and attempt to reincarcerate him. There is a fundamental unfairness in allowing a prisoner who has established himself as a productive member of society over a long period of time to have his good work destroyed by recommitment.

Prisoner Two when mistakenly released, sets out on a one-man reign of terror. He robs, cheats, steals, burgles, rapes and molests young children. When he is finally apprehended, he is the kingpin of a network furnishing heroin to school children. As to this prisoner, there is obviously nothing fundamentally unfair in denying him dead time credit for time spent on his one-man crime wave.

uniform,[4] cases such as *Merritt, Kline, Martinez,* and *Messerschmidt* make clear that a prisoner's conduct after he is mistakenly released is an important consideration in determining whether his sentence continues to run after he is mistakenly released despite his silence and through no fault of his own.

### III.

We agree that the subsequent conduct of a prisoner who remains silent while being mistakenly released is relevant to determine whether he should receive credit for time at liberty. Applying this rule, we conclude that Brown's reincarceration would not be inconsistent with fundamental principles of liberty and justice. Rather than peacefully reestablishing himself in the community, Brown left the state at his first opportunity and was arrested less than six weeks later in Louisiana on a number of felony charges. He was convicted on one of those charges and served a five year sentence in Louisiana.

Because Brown's subsequent conduct shows that reincarceration would not be inconsistent with fundamental principles of liberty and justice, he is not entitled to credit for the time he served in Louisiana against the Colorado sentence.[5]

The judgment of the district court granting habeas corpus relief is reversed.

ERICKSON, J., dissents.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the cases which support the conclusion reached by the majority require that Brown should be given credit for the time he served in Louisiana. A majority of jurisdictions, relying on *White v. Pearlman,* 42 F.2d 788 (10th Cir.1930), hold that a prisoner who says nothing when he is mistakenly released is not "at fault," and his sentence

continues to run while he is at liberty. At 572, 573. *Pearlman* was relied on by the Colorado Court of Appeals in *People v. Battle,* 742 P.2d 952 (Colo.App.1987), and we cited *Pearlman* with approval in *Watson v. Enslow,* 183 Colo. 435, 517 P.2d 1346 (1974).

In my opinion, the majority's reliance upon *United States v. Merritt,* 478 F.Supp. 804 (D.D.C.1979), is misplaced and represents the minority view. The conduct of a prisoner subsequent to an erroneous official release is not a relevant factor in determining if he should receive credit for the time he is at liberty. A prisoner mistakenly released by prison officials through no fault of his own should not be penalized for the official error, regardless of his behavior after release. Accordingly, I would affirm the judgment of the district court.

4. *See Green v. Christiansen,* 732 F.2d 1397, 1400 (9th Cir.1984) (prisoner's subsequent misconduct "leading to criminal charges" while at liberty does not stop running of sentence of mistakenly released prisoner who remained silent).

5. Because we conclude that Brown was not entitled to credit for the time he was incarcerated in Louisiana due to his conduct after he was mistakenly released, we need not decide whether Brown should not receive credit for the time he was incarcerated in Louisiana because he was not "at liberty" as the phrase was used in *Pearlman,* 42 F.2d at 789.