563 So.2d 601 (1990)
Thomas PUGH
v.
STATE of Mississippi, et al.
No. 07-KP-59506.
Supreme Court of Mississippi.
June 6, 1990.
Thomas Pugh, Parchman, pro se.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and BLASS, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, Thomas Pugh filed a habeas corpus petition in the Sunflower County *602 Circuit Court. The petition was rejected, and Pugh now appeals for relief. This Court affirms.

A. Factual Background
Because no evidentiary hearing was held in this case, this opinion's conclusion is based upon the following unsubstantiated (but undisputed) facts which derive from the parties' briefs.
In January 1978, Thomas Pugh pled guilty to armed robbery in Oktibbeha County Circuit Court; he was sentenced to twenty-years' imprisonment. In October 1983, approximately five years after commencement of his prison term, Pugh and two other inmates were temporarily released into the custody of Kent Warner, a Mississippi Department of Corrections Officer. Their release was to be for three days  during which time they were to participate in "Project Aware" speaking engagements. Unfortunately, things didn't go as planned. During the three days while they were participating in Project Aware, Warner and the three inmates were staying at a motel. And on one of these days, one of the presumably-unsupervised inmates failed to return to the motel. Warner instructed Pugh to go and find the missing inmate, and to escort him back to the motel. According to Pugh, Warner cautioned him: "[I]f you don't find [the missing inmate] then you better not come back, you hear me." Pugh supposedly searched for the inmate  but to no avail. Thus, Pugh did as Warner cautioned: He did "not come back" to the motel. Pugh simply "walked away" to freedom.
In November 1982, approximately four years later, Pugh was arrested in Los Angeles, California, for jay-walking. Pugh was subsequently extradited to Mississippi to complete his twenty-year sentence for armed robbery. Upon his return, Pugh was charged with escape; however, the charge was eventually dropped. (The record and briefs contain no specific explanation regarding why the charge was dropped.)
In September 1988, Pugh filed a habeas corpus petition  seeking four-years' credit against his twenty-year term for armed robbery. In other words, Pugh believes he should have received credit for the time he spent at liberty (i.e., in freedom). More specifically, he contends that his sentence for armed robbery should have continued to run from 1982 (when he failed to return to the motel) to 1986 (when he was arrested in California). The Sunflower County Circuit Court rejected the petition, and Pugh appealed.

B. The Issue
According to Pugh's Main Brief, the issue before this Court is whether Pugh should have been given credit for the time spent wandering the vast United States. Appellant's Main Brief as 1. However, Pugh's Rebuttal Brief seems to raise a second issue: Whether an evidentiary hearing should have been held by the circuit court. See Appellant's Rebuttal Brief at 3; see also Appellee's Brief at 4 (containing a concise response to Pugh's "second" issue).
Because this Court holds that Pugh's contention regarding the first issue, is devoid of merit  the second issue need not be reached. See Houston v. State, 461 So.2d 720, 723 (Miss. 1984) ("The Circuit Court may dismiss a petition for writ of habeas corpus summarily, without an evidentiary hearing, if an examination of the petitioner's papers reveals that the claims are manifestly without merit.") (emphasis added); accord Womble v. State, 466 So.2d 910, 912 (Miss. 1985); Sanders v. State, 440 So.2d 278, 284 (Miss. 1983).

II. ANALYSIS

A. Parties' Contentions
Pugh contends that he did not escape; rather, he was "erroneously released." Pugh further contends that his "release" was the consequence of Warner's "ministerial inadvertence" (i.e., Warner's cautioning Pugh not to "come back" to the motel if he didn't find the missing inmate). According to Pugh, his "release" was wholly unattributable to him. And based upon these premises, he concludes that "he is entitled to time spent at liberty [because] if a prisoner is released from a State Prison *603 System, and no fault can be attributed to [the] prisoner for untimely release, he is entitled to credit for time spent at liberty." Appellant's Main Brief at 3 (citing alleged authoritative support).
The State's flippant response to Pugh's contention is simply that Pugh's "sentence was interrupted through fault of his own, i.e., his own wrongdoing, and not through the inadvertence of agents of the Mississippi Department of Corrections." Appellee's Brief at 8.
[Moreover, w]hen Warner told Pugh to find [the missing inmate] else he better not come back, the officer meant for Pugh to look real hard for the . .. inmate. Not even an imbecile with the IQ of a freeze-dried rutabaga would have considered Warner's verbal hyperbole as a permanent ticket to freedom.
Id. at 6.

B. Disposition

1.
Pugh attempts to analogize the facts of the case sub judice to those of cases involving an erroneous release from custody which resulted from a ministerial inadvertence (e.g., release due to miscomputation of time served by the inmate). Research revealed no published Mississippi case on point.
Assuming arguendo that Pugh's analogy is accurate, then examination of the leading case instructive on the issue  whether an erroneously-released inmate is entitled to credit for time spent at liberty  is in order. See White v. Pearlman, 42 F.2d 788 (10th Cir.1930) (Pugh relies on this case for support). In White, Pearlman had been sentenced to a five-year term in a Texas federal prison; however, he was prematurely released after the warden mistakenly thought Pearlman had been sentenced to only a three-year term. Of significance, Pearlman had unsuccessfully "protested" his premature release  claiming that he was sure he had been sentenced to a five-year term and that the warden must have made a mistake.
Eventually, Texas officials realized the mistake and sought the return of Pearlman. Upon learning that Texas prison officials were looking for him, Pearlman returned voluntarily. Pearlman subsequently filed a habeas corpus petition and requested that his time spent at liberty should be credited against his five-year term. The Tenth Circuit Court of Appeals granted him relief and opined: "[W]here a prisoner is discharged from a penal institution `without any contributing fault on his part' ... his sentence continues to run while he is at liberty." White, 42 F.2d at 789 (citations omitted), quoted in Brown v. Brittain, 773 P.2d 570, 572 (Colo. 1989). The Circuit Court not only found no fault on the part of Pearlman, it found that he was in essence "ejected" from prison in spite of his protests. 42 F.2d at 789.
In the case sub judice, Pugh (like Pearlman) knew or should have known that his "release" from custody was erroneous. But unlike Pearlman, Pugh did not protest his erroneous "release." Many courts have cited White for the proposition: (1) that an inmate who says nothing when he is erroneously released is not "at fault," and (2) that released inmate's sentence continued to run during the time he was at liberty. See, e.g., Green v. Christiansen, 732 F.2d 1397, 1400 (9th Cir.1984); Lanier v. Williams, 361 F. Supp. 944, 947 (E.D.N.C. 1973); Ex parte Agee, 474 So.2d 161, 163 (Ala. 1985); Carson v. State, 489 So.2d 1236, 1238 (Fla.Ct.App. 1986). These courts clearly misconstrued White. The Tenth Circuit Court in White specifically noted that "we do not now consider" the issue: "[W]hether a[n inmate], who knows a mistake is being made and says nothing, [should be deemed] at fault." Id. In short, White has been relied upon for a proposition which was never actually decided. In addition, the courts which misconstrued White failed to provide an independent premise for their conclusion that an erroneously-released inmate is entitled to receive credit for time "served" at liberty.
Again, assuming arguendo that Pugh's liberty was the consequence of an "erroneous release" (as opposed to an "escape" or otherwise), then this Court accords its view *604 with the view espoused in United States v. Merritt, 478 F. Supp. 804, 807 (D.D.C. 1979). Basically, the U.S. District Court in Merritt refused to apply a blanket rule under which every erroneously-released inmate is entitled to credit for his time at liberty:
A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several ... factors must be present before relief will be granted  the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his reincarceration must be "unequivocally inconsistent with `fundamental principles of liberty and justice.'"
United States v. Merritt, 478 F. Supp. 804, 807 (D.D.C. 1979) (citations omitted). An examination of the record and briefs leads to the conclusion that the Merritt factors were not met in Pugh's case.

2.
Finally, this Court concludes that, under the facts provided by Pugh in his briefs, the case sub judice does not fall within the realm of "erroneous-release" doctrines. In short, Pugh was not actually "released" from imprisonment as a consequence of an official's miscomputation; rather, he escaped or "walked away" by his own volition while participating in a community service (i.e., "Project Aware"). Certainly, he knew, or should have known, that his newfound freedom was improper. Yet, as noted in the preceding subsection, he failed to protest his self-described "release." Denying Pugh relief would not constitute an abrogation of his right to fundamental fairness; indeed, Pugh failed to show otherwise.

III. CONCLUSION
In sum, this Court declines at this point in time to adopt or apply a blanket doctrine under which every erroneously-released inmate is entitled to credit for his time spent at liberty. Alternatively, this Court holds that "erroneous-release" doctrines are inapplicable in the case sub judice for the simple reason that Pugh was never actually "released" from prison.
Finally, because Pugh's contention is devoid of merit, an evidentiary hearing was unwarranted. This deduction aside, an evidentiary hearing probably would have been unproductive since Pugh's version of the facts was undisputed. Moreover, this opinion's conclusion was premised on Pugh's version.
Accordingly, this Court denies relief and affirms the circuit court decision.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.