James M. CRATER, a/k/a Jimmie E. Crater, Petitioner–Appellant,

v.

Robert FURLONG, Respondent–Appellee.

No. 94SA172.

Supreme Court of Colorado, En Banc.

Nov. 15, 1994.

Rehearing Denied Dec. 19, 1994.

**1128**

James M. Crater, pro se.

No appearance by respondent-appellee.

Justice SCOTT delivered the Opinion of the Court.

The petitioner, James M. Crater, filed a pro se petition for writ of habeas corpus in the Lincoln County District Court, seeking immediate release from the Limon Correctional Facility. The district court denied the petition without holding a hearing, and the petitioner appealed.[1] Because the petitioner has not alleged sufficient acts or omissions by state officials to constitute a waiver of Colorado's interest in his further incarceration, and because the petitioner is not otherwise entitled to immediate release, the district court denied his petition for writ of habeas corpus. We therefore affirm the judgment of the district court.

**I**

According to the petitioner,[2] he was convicted of second-degree murder in 1967, in Adams County District Court, and in January 1967 was sentenced to not less than thirteen, nor more than thirty, years imprisonment. The petitioner escaped from the Colorado Department of Corrections (DOC) on September 3, 1972, and fled the state. State authorities subsequently issued a fugitive arrest warrant for the petitioner, and escape charges were filed in Fremont County.

On November 14, 1972, the petitioner was arrested in Kentucky on charges of armed robbery and assault on a police officer. The petitioner was also held on the Colorado warrant. The authorities in Colorado were informed in May of 1973 that the petitioner had been convicted of four counts of armed robbery and sentenced to four ten-year sentences in Kentucky, to run concurrently. The DOC was also advised that the petitioner would be serving his Kentucky sentences at a particular penitentiary, that the warrants issued by the Governor of Colorado and the Governor of Kentucky would follow the petitioner as detainers in the Kentucky prison system, and that Colorado would be notified when the petitioner was "available" to the DOC. Thereafter, the charges relating to the petitioner's escape were dismissed in Colorado without prejudice. When the petitioner was discharged from the Kentucky prison system in July 1979, there were no Colorado detainers of record pending against him. As a consequence, on discharge petitioner was not returned to the custody of the DOC but, instead, he was released by Kentucky officials, allowing him to travel to Illinois.

Months later, in December 1979, the petitioner was arrested in Illinois and charged with armed robbery. He was subsequently convicted of that offense and sentenced to thirty years in the Illinois penitentiary. On March 25, 1986, almost fourteen years after his escape, Colorado lodged a detainer against the petitioner in Illinois. The petitioner was extradited to Colorado on December 28, 1993, and reincarcerated in the DOC. The petitioner alleges that the DOC has not credited him with the time of his actual confinement in Kentucky and Illinois toward his Colorado sentence, and that he has not been given proper credit for good-time and earned-time.

**II**

Petitioner first contends that Colorado either waived or forfeited all legal juris-

---

1. The petitioner's appeal was initially filed in the court of appeals. The court of appeals referred the matter to us for a determination of jurisdiction pursuant to § 13–4–110(1)(a), 6A C.R.S. (1987). We ordered that the case be transferred to our docket in exercise of our jurisdiction over appeals from the district court in habeas corpus cases, § 13–4–102(1)(e), 6A C.R.S. (1987).

2. We derive the facts used in this opinion from the petitioner's petition for habeas corpus and accompanying documents, and from the briefs he has filed in this court.

diction over him, or that the actions of state officials constituted a pardon or commutation of the unserved portion of his sentence. The petitioner cites *Shields v. Beto*, 370 F.2d 1003, 1005–06 (5th Cir.1967) (holding that the release of prisoner by Texas authorities before the expiration of his sentence and extradition of prisoner to Louisiana combined with Texas' failure to take any affirmative action for 28 years to secure prisoner's return was equivalent to pardon or commutation of sentence and constituted a waiver by Texas over the prisoner); and *Lanier v. Williams*, 361 F.Supp. 944, 947–48 (E.D.N.C.1973) (ruling that where a state has mistakenly released a prisoner, and the state through the acts or omissions of its officials has led that prisoner to believe, through no fault of the prisoner's, that he is free of the sentence imposed, and the state makes no attempt to reacquire custody over the prisoner for prolonged number of years, due process requires that the state be deemed to have waived further jurisdiction and custody over the prisoner) as the controlling cases.

In *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973), however, in explaining and distinguishing its decision in *Shields v. Beto*, the Fifth Circuit stated that in order to show a violation of due process

> it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction.

485 F.2d at 246. *Accord Fabian v. Reed*, 714 F.2d 39, 41 (5th Cir.1983).

Unlike the situation in *Lanier v. Williams*, the petitioner's confinement in Colorado was interrupted not by the state but by his own acts—his escape. Had he not escaped and become a fugitive from justice, his incarceration in Colorado would not have been interrupted. Colorado officials did not exhibit conduct that was so "affirmatively wrong" or constituted "inaction so grossly negligent" for due process to require the state to waive

any interest in the petitioner's continued incarceration. Notwithstanding the dismissal of charges relating to the petitioner's escape, Colorado officials could have reasonably believed that a detainer had been placed on the petitioner so as to assure his return to Colorado upon release. For whatever reason, however, upon completion of the petitioner's sentence, Kentucky did not notify Colorado when it released the petitioner.

■ Even if a prisoner does not escape (like the petitioner did), but is instead released by mistake, the prisoner's conduct following the release is a relevant factor in determining whether he should be given credit for time spent in another state's custody. In *Brown v. Brittain*, 773 P.2d 570, 570 (Colo.1989), the prisoner was committed to the custody of the DOC. He was released by mistake rather than being transported to the DOC, and he went to Louisiana where he was subsequently arrested and charged with aggravated robbery, resisting arrest, escape, and damage to property. *Id.* at 571. He was convicted in Louisiana, sentenced to the Louisiana prison system, and after he was paroled, was released to Colorado authorities because a detainer had been lodged against him. *Id.* In reversing the district court's ruling granting the prisoner credit for the time he was confined in Louisiana, we held that the prisoner's "reincarceration would not be inconsistent with fundamental principles of liberty and justice." *Id.* at 575.

■ In this case, after the petitioner escaped from the custody of the DOC and left Colorado, he went to Kentucky where he was arrested for, and convicted of, armed robbery. Upon his release from the Kentucky prison system, the petitioner did not voluntarily return to Colorado. Instead he traveled to Illinois where he was arrested and again convicted of armed robbery. Learning of the petitioner's conviction in Illinois, Colorado then placed a detainer on the petitioner and upon the completion of his sentence in Illinois, the petitioner was returned to Colorado. Thus, the petitioner's "reincarceration would not be inconsistent with fundamental principles of liberty and justice." *Id.*

Cases where a prisoner is discharged from prison erroneously, and without fault on the prisoner's part, are not comparable or applicable to cases like this one where the prisoner in fact escapes. *See White v. Pearlman,* 42 F.2d 788, 789 (10th Cir.1930) (where prisoner is discharged from prison, without any contributing fault on his part, his sentence continues to run when he is at liberty; distinguishing those cases where the prisoner escapes from custody as outside the foregoing rule). We conclude that the petitioner has not alleged sufficient misconduct or inaction on the part of Colorado officials to constitute a waiver of jurisdiction over him for purposes of continued imprisonment on his original 1967 sentence for second-degree murder.

### III

The petitioner also claims he should be given credit for time served in Kentucky and Illinois after his escape from Colorado, including credits for good time and earned time. We disagree.

In *Barber v. Cooper,* 719 P.2d 1094 (Colo.1986), the petitioner sought a writ of habeas corpus claiming that he was entitled to credit on his Colorado sentence for the time he spent in federal custody. The prisoner was convicted of first-degree murder in Colorado in 1971, and the trial court imposed a life sentence in the state penitentiary. *Id.* at 1094. He escaped in 1974 and was arrested in California and charged with bank robbery. *Id.* The prisoner was convicted on that charge and sentenced to ten years in the federal penitentiary, to be served consecutive to his Colorado sentence. *Id.* He was transported to the DOC in 1975, but the DOC refused to take custody, so he was transferred to the federal penitentiary. After serving the federal sentence, the prisoner turned himself in to Colorado officials. In computing his parole eligibility date, the DOC refused to give any credit for the time the prisoner served in federal custody. *Id.* at 1095. This court concluded that the prisoner had no right to such credit:

> If a prisoner has violated both state and federal law, he is subject to prosecution by both sovereigns and may not complain of the order in which each sovereign proceeds against him.... [T]he federal conviction took place while petitioner was on escape status from the Colorado penitentiary. Because the petitioner has no right to serve one sentence before another, and no prejudice or unfairness results from the state's refusal to accept petitioner upon his return from California, we hold the district court acted properly in dismissing petitioner's petition for writ of habeas corpus and/or rule to show cause.

*Id.* The petitioner in this case violated the laws of Colorado, Kentucky, and Illinois, and was therefore subject to prosecution, conviction, and imprisonment by all three jurisdictions. The petitioner has not alleged any agreement with Colorado that he be given credit for the sentences he served in Kentucky or Illinois, nor has he provided any other appropriate basis for crediting him with time served against his term of imprisonment in Colorado. Section 17–22.5–103, 8A C.R.S. (1986), provides:

> **17–22.5–103. Computation of time.** No inmate shall be discharged from the department until he has remained the full term for which he was sentenced, to be computed on and after the day on which he was received into the same and *excluding any time the inmate may have been at large by reason of escape therefrom, unless he is pardoned or otherwise released by legal authority.*

(Emphasis added.) The petitioner contends that because he was sentenced in 1967, the statute that applies to him is section 17–20–106, 8 C.R.S. (1978) (repealed by Chapter 125, sec. 1, § 17–20–106, 1984 Colo.Sess. Laws 515). The result under that statute would be the same, however, because under repealed section 17–20–106, the petitioner would not be allowed any good-time credit for the time he spent outside the Colorado prison system after his escape in 1972:

> **17–20–106. Forfeiture of good time.** If any convict escapes or attempts to escape from the state penitentiary, he shall forfeit all deductions from the time of his sentence which he has earned under sections 17–20–104 and 17–20–105. *Upon the return to custody of a convict who has es-*

*caped or upon the apprehension of a convict who has attempted to escape,* he shall at once be credited with the actual time which elapsed between the date when he was received at the state penitentiary and the date when he escaped or attempted to escape. Said time so credited to the convict shall be deducted from the maximum time of his sentence, and the balance of time then remaining shall constitute the remainder of the sentence such convict is to serve. In serving the remainder of his sentence, said convict shall be entitled to earn deduction from the time thereof, or so-called good time, in accordance with the provisions of sections 17–20–104 and 17–20–105. *The date of the return to the state penitentiary or apprehension of said convict shall be a new starting point for the earning of all such good time,* which shall thereafter be computed in the same manner as if said convict were then commencing to serve the first year of a new sentence. Successive attempts to escape shall be dealt with in the manner provided for in this section.

(Emphasis added.) The petitioner argues that the starting date for earning good time credits is the date that he was arrested in Kentucky, November 14, 1972. The term "apprehension" in the above statute, however, when read in the context of the entire statute, means "apprehension" after an *attempted escape.* If the prisoner actually *escapes,* as did this petitioner, who fled the state and was arrested in Kentucky for armed robbery and assault, then "[t]he date of the return to the state penitentiary ... shall be a new starting point for the earning of all such good time...." § 17–20–106. Thus, even under the repealed statute, the petitioner is not entitled to the credit he claims. Moreover, were we to accept petitioner's argument that he be given credit for time served after his escape, he would obtain better treatment than prisoners who, through no fault of their own, are erroneously discharged. Such a result could serve no purpose other than to encourage escapes, a result contrary to our public policy.

## IV

We conclude that the petitioner's "reincarceration would not be inconsistent with fundamental principles of liberty and justice." *Brown v. Brittain,* 773 P.2d 570, 575 (Colo. 1989). Because it appears on the face of the petition and supporting documents that the petitioner is not entitled to habeas corpus relief, the district court properly denied the petition without a hearing. *Brant v. Fielder,* 883 P.2d 17, 21 (Colo.1994). The judgment of the district court dismissing James M. Crater's petition for writ of habeas corpus is therefore affirmed.