**UNITED STATES of America, Plaintiff,**

v.

**David Lloyd NICKENS, Defendant.**

**Crim. No. 89–080 GG.**

United States District Court,
D. Puerto Rico.

June 23, 1994.

Rosa E. Rodriguez Velez, Asst. U.S. Atty., Hato Rey, PR, for plaintiff.

Rafael F. Castro–Lang, San Juan, PR, for defendant; Gabriel J. Chin, New York City, of counsel.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

The defendant, David Lloyd Nickens, is seeking credit against his sentence for the period between the date on which the First Circuit affirmed his conviction and the date the U.S. Marshals Service ordered him to surrender. The defendant asserts a right to such a credit because he alleges the government negligently delayed the order to surrender for over one year. We will now provide the background to the defendant's motion.

On December 7, 1989, 729 F.Supp. 1407, the defendant was sentenced to a term of imprisonment pursuant to his conviction by a jury on three counts of violating 21 U.S.C. §§ 841(a)(1), 952(a), and 955. We granted the defendant the option of voluntary surrender. The defendant surrendered voluntarily on January 31, 1990 to begin his sentence of 95 months. On August 14, 1990, the defendant was released on bond pending appeal, pursuant to a stipulation between the government and the defendant, and remained free on bond until April 1, 1993. The Court of Appeals for the First Circuit affirmed the defendant's conviction on January 29, 1992, 955 F.2d 112, and denied on February 6, 1992, his motion to stay the mandate pending application for certiorari to the Supreme Court. On February 18, 1992, the defendant's attorney wrote to A.U.S.A. Rosa Rodriguez–Velez in an attempt to determine when and where the defendant should turn himself in to continue his sentence. The First Circuit issued the mandate on February 20, 1992. The Supreme Court denied certiorari on October 5, 1992.

The U.S. Marshals Service was notified with a copy of the First Circuit's mandate and its opinion and judgment, affirming the defendant's conviction. But it did not send the defendant a notice designating a date and place for voluntary surrender until March 23, 1993, a year and one month after issuance of the First Circuit's mandate and approximately five months after certiorari was denied. Because the defendant had not reported to continue his sentence, the government, on February 24, 1993, filed a motion for a warrant of arrest, docket # 90, which became moot when the defendant surrendered to continue his sentence on April 2, 1993.

On March 10, 1993, the defendant filed a motion, docket # 92, under 28 U.S.C. § 2255, seeking credit against his sentence for the time he spent "erroneously" at liberty, between the time the First Circuit affirmed his conviction and the time the government began its efforts to have the defendant continue service of his sentence. In seeking this credit, the defendant relies heavily on two cases decided by the Court of the Appeals for the Ninth Circuit. In those cases, the Ninth Circuit adopts and defines a "doctrine of credit for time at liberty," which it describes in the following manner:

> Under the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own.

*United States v. Martinez*, 837 F.2d 861, 865 (9th Cir.1988); *see also Green v. Christiansen*, 732 F.2d 1397, 1400 (9th Cir.1984). The defendant argues that, because his conviction had been affirmed, any time he spent at liberty thereafter should be considered the product of the government's "erroneous" and negligent failure to set out and inform him of the terms of his voluntary surrender. Because he remained free for one year and one month through no fault of his own after his conviction was affirmed, the defendant claims he should be granted credit for that period of time. We do not agree. As we discuss below, the defendant was not released erroneously. In addition, the time he spent at liberty accrued to his benefit since during that period he was awaiting the result of his petition for certiorari to the Supreme Court. Lastly, the defendant has not shown that the

First Circuit recognizes a doctrine for credit for time spent at liberty based on a theory of simple or mere negligence or that the government was negligent in this case.

In *Martinez*, the Ninth Circuit acknowledged that the traditional, common-law rule is that "a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed." *Martinez*, 837 F.2d at 864. Various exceptions exist to that common-law rule. For example, many courts have carved out a due process waiver and an estoppel exception to the right of the government to reincarcerate a defendant after he has been erroneously released. The due process waiver theory would prevent the government from executing a sentence "when its agents' actions are so *affirmatively improper or grossly negligent* that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Green*, at 1399 (emphasis added). Estoppel would prevent the government from reincarcerating an erroneously released prisoner when the government has led him to believe that he has no more time to serve. *Green*, at 1399.

■ It is important to point out as a preliminary matter that the defendant was not "erroneously released" in the first place; he was out on bond pending appeal. He was still under bond at the time he surrendered; the defendant did not move for the release or exoneration of bond until after he voluntarily surrendered in April 1993. *Compare Martinez*, 837 F.2d at 863 (district court issued order exonerating defendant's appeal bond in 1978, five years *before* he was ordered to recommence his sentence). Under these circumstances, the defendant's sentence was suspended until he received an order to report to recommence his sentence.

■ In his motion, the defendant has not made any waiver or estoppel claim. But even if he had, and even if we consider the time spent at liberty to be the result of an "erroneous" act by the government—the failure to inform the defendant of the terms of his voluntary surrender—the due process waiver and estoppel theories would provide no relief to the defendant. We are not confronted with conduct so "affirmatively improper or grossly negligent" by the government that due process is violated and execution of the sentence therefore waived. *Compare Martinez*, 837 F.2d at 865 (failure to order the execution of sentence for *seven and one-half years* was not so affirmatively wrong or so grossly negligent that fundamental fairness was violated); *Green*, 732 F.2d at 1399 (inadvertence of a marshal in failing to place a detainer on the defendant did not meet requisite standard of misconduct to waive the government's right to reincarcerate the defendant); and *Shelton v. Ciccone*, 578 F.2d 1241 (8th Cir.1978).

■ Nor is the government estopped from reincarcerating the defendant. The government's delay in ordering him to surrender created no valid expectation that he would not have to serve his complete sentence. The defendant knew that he had time to serve; this is not a situation in which the defendant was released under the impression that he had completed his sentence. *See Green*, 732 F.2d at 1399; *Martinez*, 837 F.2d at 865. In fact, during his time at liberty, the defendant continued to challenge his conviction by applying to the Supreme Court for a writ of certiorari, denied on October 22, 1992. This continuation of the appeals process reveals that the defendant was aware that a sentence was still looming over his head. The delay in designating the terms of voluntary surrender actually worked to the defendant's benefit, since it allowed him to remain free pending the outcome of his petition for certiorari. Only five months elapsed from the denial of certiorari to the date the Marshals Service designated the terms of surrender on March 23, 1993. *Compare Scott v. U.S.*, 434 F.2d 11, 22–23 (5th Cir. 1970) (elapse of some *twenty-seven months* during which petitioner was allowed his liberty before being taken into federal custody was under circumstances which were in petitioner's interest in appealing state convictions, so that the federal sentence remains subject to execution despite the delay; there had been no loss of interest in him on the part of the federal authorities).

This case presents a factual situation different from many of the cases the defendant cites to support a claim for credit. When a defendant is released erroneously, his sentence may continue to run during the time he is erroneously at liberty. *See White v. Pearlman*, 42 F.2d 788 (10th Cir.1930) (prisoner informed warden that premature release was a mistake, but warden insisted on release because prison records erroneously indicated sentence had been completed); *Kiendra v. Hadden*, 763 F.2d 69, 72 (2nd Cir.1985) (prisoner sought credit against federal sentence for time spent at liberty after marshals erroneously failed on three occasions to accept custody from state officials and enforce federal detainer issued pursuant to a judgment and commitment order which *specifically* directed that the federal sentence was to commence upon defendant's release from the sentence being served on a state charge)[1]. Unlike the situation in *Pearlman*, the defendant was not mistakenly "discharged" or released from a penal institution; he was released on bond pending appeal. Nor did the Marshals repeatedly fail to enforce an outstanding federal detainer and commitment order, as in *Kiendra*. Although the Marshals could have acted more quickly to order the defendant to report to continue his sentence, we will not equate a delay in doing so to an "erroneous release" or a repeated failure to enforce a federal detainer.

■ With *Martinez* and *Green*, the Ninth Circuit has added another exception to the common-law rule that a convicted person erroneously at liberty must serve the full sentence imposed when the error is discovered. In those two cases, the Ninth Circuit developed the aforementioned doctrine of credit for time spent erroneously at liberty, based on a theory of *simple or mere negligence*. In *Martinez* the Court held that, based solely on a theory of simple or mere negligence, a

defendant, released on bond pending appeal of his conviction, can receive credit for time at liberty between the time his conviction was affirmed and the time the government ordered him to surrender to serve his sentence. *See also United States v. Friedman*, NO. 88 CR. 613 (MEL), 1993 WL 227702 (S.D.N.Y.1993) (unpublished opinion). This is just the kind of credit that the movant seeks.

The doctrine of credit for time spent erroneously at liberty based on simple or mere negligence presents an issue of first impression in this Circuit. Our review of the case law in this area belies the defendant's assertion that granting credit for time at liberty arising from simple or mere negligence is a "well-established principle." We find that the defendant is not entitled to such a credit for the government's delay in issuing a designation of surrender after his conviction was affirmed on appeal. *Martinez* carves out the latter exception, but we will not follow.

In *Martinez*, the defendant was convicted in 1973 and the mandate of the court of appeals affirming the conviction was filed on March 8, 1976. Throughout the 1973–76 appeals period the defendant was free on bond. Although the defendant maintained the same address, made no attempt to conceal his identity or to flee, and continued to work at the same job, it took the government *seven and one-half years* to file a motion for an order to have the defendant begin service of his sentence, which the defendant did on October 31, 1983. On remand from a reversal of a denial of defendant's section 2255 motion for a stay of surrender and to vacate his sentence, the district court found that the defendant should not be released on probation, and ordered that the defendant recommence service of his sentence. On appeal of that order[2] the Ninth Circuit found the claim for credit for time at liberty to be premature because the defendant had not exhausted

---

1. Neither of these two cases were based on a theory of simple or mere negligence.

2. The findings made by the district court were quoted in *Martinez*, 837 F.2d at 863, as follows:
   That the defendant's counsel Mr. Alan A. Sigel was advised by notice from the clerk of the court of the filing and spreading of the judgment of the Court of Appeals affirming the

conviction of Mr. Martinez ... [T]hat the record shows that Mr. Sigel was present on March 8, 1976 at the filing and spreading of the mandate of the court of appeals. And that he presented to the clerk a business card. ... That Mr. Martinez was personally aware, as was his counsel, that the conviction for which he'd been sentenced was affirmed by the Court of Appeals. That the petition for writ of cer-

administrative remedies through the prison system. But it suggested that the government's failure to execute the sentence for seven and one-half years constituted simple or mere negligence, which justified granting the defendant credit against his sentence for time spent at liberty.

We disagree with *Martinez*, in which the court states that a defendant "has no affirmative duty to aid in the execution of his sentence," especially in a context like that of this case. *Id.*, at 866. We granted the defendant bond pending appeal, to which a defendant is not entitled as a matter of law, *U.S. v. Bright*, 541 F.2d 471, 477 (5th Cir. 1976), *cert. denied*, 430 U.S. 935, 97 S.Ct. 1560, 51 L.Ed.2d 780 (1977), and the option of voluntary surrender in the judgment of conviction. The Appearance Bond, which was a continuing bond that covered the appeals period, sets out as a condition of release, that "[t]he defendant is to abide by any judgment entered ... by surrendering to serve any sentence imposed." It is true that the Order Setting Conditions of Release states that the defendant "shall surrender for service of any sentence imposed *as directed*," thereby creating some ambiguity as to any affirmative duty on the defendant's part to arrange a surrender. Nonetheless, we find that the defendant had the affirmative duty under the original judgment and sentence, which granted him the option of voluntary surrender, and under the personal recognizance portion of the conditions of release, to stay in contact with officials to arrange such a surrender. To his credit, the defendant made an initial affirmative effort to arrange surrender. But when the government did not respond, he took advantage of that failure to remain free on bond, in part for the period during which his petition for certiorari was pending.

Even if the defendant had no affirmative duty to arrange a surrender, we find that the government did not act negligently in delaying to issue instructions for the defendant's

voluntary surrender and that the defendant suffered no prejudice from the government's delay. The delay of slightly more than one year in this case does not begin to compare with the more than seven year delay in *Martinez*. In addition, in *Martinez* the defendant was released from bond five years *before* he was ordered to recommence his sentence. The exoneration of bond indicates that the defendant in *Martinez* was in fact "at liberty." He had been exonerated from the duties imposed by his bond and therefore correctly met the "erroneously released" description. That fact is not true in defendant Nickens' case.

As we have indicated above, an action based on a theory of mere or simple negligence may not be recognized in the First Circuit. But even if it were, the defendant has not shown negligence on the government's behalf. With all due respect to the Ninth Circuit, we do not think *Martinez* gave sufficient weight to the findings made by the district court. Similar to the district court in that case, we find that the defendant in this case was notified that his conviction had been affirmed by the circuit court. The defendant knew that his petition for a stay of the mandate had been denied. The mandate was filed with the district court and notified to the defendant. The defendant was under an affirmative obligation to work out conditions of surrender with the government. In addition, the defendant has not shown simple negligence or gross negligence on behalf of the government or any reason to estop reincarceration or fulfillment of the sentence as originally handed down by this court. Lastly, the delay did not prejudice the defendant. For these reasons, we deny defendant's motion for credit for time spent at liberty.

**SO ORDERED.**

---

tiorary [sic] had been denied and the petition for rehearing had been denied by the Supreme Court of the United States. That Mr. Martinez was under an obligation to surrender himself to begin the prison sentence which had been imposed upon him. That he with knowledge of the fact that a clerical error had been made by the court in the failure to issue a bench

warrant for his arrest upon his failure to present himself for service of the sentence did willfully and with full knowledge of that error fail to advise the government or the court of the error and continued to absent himself from the service of the sentence until he was arrested in 1983.