**COMMONWEALTH of Pennsylvania**

v.

**Marshall BLAIR, Appellant.**

Superior Court of Pennsylvania.

Argued June 10, 1997.

Filed July 30, 1997.

Charles J. Porter, Pittsburgh, for appellant.

Sally K. Kaye, Assistant District Attorney, Pittsburgh, for Commonwealth., appellee.

Before CIRILLO, President Judge Emeritus, and JOHNSON and FORD ELLIOTT, JJ.

CIRILLO, President Judge Emeritus:

Marshall Blair appeals from an order entered in the Court of Common Pleas of Allegheny County denying his motion to dismiss charges and vacate sentence. We affirm.

Blair was involved in a fight that took place in the Oakland section of Pittsburgh outside of a local college bar. As a result, Blair was tried by a jury and convicted of aggravated assault and simple assault. On February 24, 1993, Blair appeared for sentencing before the Honorable Joan Orie Melvin and was sentenced to twenty-four months to sixty months imprisonment, followed by a

ten-year probationary term.[1] On March 1, 1993, Blair filed a motion to reduce his appeal bond, which Judge Melvin had set at $50,000.00. This request was denied. The next day, March 2, 1993, bond was posted on Blair's behalf.

While free on bond, Blair filed a notice of appeal on March 19, 1993. In an unpublished *memorandum opinion*, this court affirmed Blair's judgment of sentence. *See Commonwealth v. Blair*, No. 460 Pittsburgh 1993, 435 Pa.Super. 641, 645 A.2d 885 (memorandum decision filed April 18, 1994). On May 31, 1994, the Superior Court remanded the record in this matter to the Court of Common Pleas of Allegheny County; its receipt was acknowledged on June 7, 1994. At this time, the trial court was under the impression that Blair had already begun to serve his prison sentence. According to the trial court, it was unaware that Blair remained free on bond because his bond papers, which would have alerted the court to the fact that Blair was at liberty and not incarcerated, were missing from the record.

Over two years later, in September of 1996, the Pennsylvania Department of Corrections contacted the trial court to inquire into the status of Blair's direct appeal. Upon investigation, the trial court determined that Blair was not incarcerated. A hearing was held on October 11, 1996, at which time Blair was ordered to begin serving his sentence pursuant to Pa.R.A.P. 1763 (vacation of supersedeas on affirmance of conviction). Additionally, the trial court orally denied a motion filed by Blair to dismiss or, alternatively, vacate his judgment of sentence. Blair then filed a motion to reconsider. On October 22, 1996, the trial court cited a lack of jurisdiction in the matter, and ordered that no action be taken on Blair's motion to dismiss or to

vacate sentence. This appeal followed. Blair raises one issue for our consideration:

Whether the appellant is entitled to credit for time erroneously at liberty based on the trial court's failure to comply with the requirements of Pa.R.A.P. 1763?

Initially, we note that Pennsylvania Rule of Appellate Procedure 1763 reads as follows:

### RULE 1763. VACATION OF SUPERSEDEAS ON AFFIRMANCE OF CONVICTION

Unless otherwise ordered pursuant to this chapter, upon the remand of the record in any matter in which the judgment of sentence was affirmed a defendant who has been released pending appeal shall appear in the lower court at such time as the defendant may be there called, and shall be committed by that court until the defendant has complied with the original sentence, or any part thereof which had not been performed at the time the defendant was released pending appeal.

Pa.R.A.P. 1763 (emphasis added). Blair asserts that the trial court's delay of over two years and four months from remand of the record to the date that he was required to begin serving his sentence via Rule 1763 is egregious and warrants relief. Blair asserts that he has been seriously prejudiced by the delay; specifically, Blair contends that he had become gainfully employed, secured his own apartment, purchased an automobile, and was continuing his education when, on October 11, 1996, all of his gains "were ripped away from him ... when he was required to return to jail[.]" Blair argues that he is entitled to credit for the period of time that he erroneously remained free due to the trial court's failure to comply with Rule 1763.[2] In the alternative, Blair requests that he be discharged.

---

1. The trial court also recommended that Blair be considered for Boot Camp, which is an alternative method of incarceration available to persons who meet certain eligibility requirements. *See* 61 P.S. § 1121 *et seq.* The trial court indicated that if Blair successfully entered and completed six months of Boot Camp he would be eligible for immediate parole. *See* 61 P.S. § 1127. Further, Blair was ordered to pay the victim's family $ 1,527.18 in restitution.

2. Blair "does not seek credit for the time for which he was properly released on bond," *i.e.,* from March 2, 1993 (date released on bond) to April 18, 1994 (date judgment of sentence was affirmed by this court). Rather, Blair only claims credit for that period of time between April 18, 1994 (the affirmance of his judgment of sentence) and October 11, 1996 (the date the trial court ordered him to begin sentence).

We note that this is not a case where a court has failed to impose sentence within the requisite time period;[3] Blair was, in fact, sentenced. Rather, at issue is Blair's time at liberty between this court's affirmance of his judgment of sentence and the trial court's order to begin serving sentence. *See* Pa. R.A.P. 1763. We must determine whether this oversight justifies crediting Blair's sentence for his time at liberty. Rule 1763 specifies no time frame in which the trial court, upon receipt of a remanded record, must call a defendant to appear in court to begin his sentence. We found no Pennsylvania case law interpreting this rule. Additionally, there is no Pennsylvania authority allowing for either credit towards sentence or discharge under these circumstances, *i.e.,* where a defendant has erroneously remained at liberty for an extended period of time before being ordered to commence sentence.

Historically, courts from various jurisdictions applied the rule that where a final sentence of imprisonment had been rendered, delay in executing such a sentence did not preclude a subsequent enforcement of the sentence. *See* 98 A.L.R.2d 687,[4] (where defendant was sentenced, began serving the sentence, procured a writ of habeas corpus, was at liberty under an appeal bond and, through an oversight, was not taken into custody for approximately two years from the affirmance of his judgment of sentence, the court held that the state's delay did not preclude the state from enforcing the judgment of sentence, reasoning that the defendant's sentence was interrupted with his consent in procuring a writ of habeas corpus and a subsequent appeal); *Ex parte Silverman,* 69 Ohio App. 128, 133, 42 N.E.2d 87, 89 (1942) (where defendant argued that he should be exonerated from serving his sentence where the sheriff failed to lodge him in the state penitentiary within five days after judgment of his conviction, the court stated: "[I]t certainly would be a novel construction to hold that the wrong, if any, of the sheriff

cancelled the wrong of the convicted person."); *Etheridge v. Poston,* 176 Ga. 388, 168 S.E. 25 (1933) (where defendant was sentenced on November 3, 1931, and was not arrested for commitment until March 14, 1932, defendant was not entitled to discharge, notwithstanding the fact that no certiorari had been issued, no motion for a new trial was pending, and defendant had remained in the county and been accessible at all pertinent times); *Volker v. McDonald,* 120 Neb. 508, 233 N.W. 890 (1930) (where defendant was sentenced, judgment was affirmed on appeal, and no proceedings were had pursuant to the mandate issued to the trial court until 10 years later, it was held that since the defendant had knowledge of the status of his case he should have surrendered himself, that no estoppel could work against the state in such a case, and that the time that elapsed before defendant was actually imprisoned would not be regarded as part of his sentence); *Middleton v. State,* 160 Ark. 108, 254 S.W. 342 (1923) (where, after sentence and pending appeal, defendant was at liberty on an appearance bond, and no appeal was prosecuted, and one year later defendant was committed under the judgment, the court held that the commitment was legal, since the judgment had never been satisfied; a release on an appearance bond was not a discharge from the penalties imposed by the judgment and no presumption could be indulged that these penalties were satisfied while defendant was under bond).

Many of these early cases espoused a simple, logical approach that, regardless of the delay between sentencing and confinement, a judgment of sentence could **only** be satisfied with a term of imprisonment. *See United States ex rel. Mayer v. Loisel,* 25 F.2d 300 (5th Cir.1928) (where six months had elapsed before process was issued enforcing defendant's judgment of sentence, the court held that the mere lapse of time without defendant undergoing the imprisonment to which she was sentenced did not constitute service

---

**3.** A sentence shall ordinarily be imposed within 60 days of conviction. *See* Pa.R.Crim.P. 1405 A(1).

**4.** While some courts held that a delay in enforcement of sentence precluded implementation of

such sentence, such courts frequently recognized the force of the general rule that delay in executing a sentence of imprisonment does not avert its ultimate enforcement. *See* 98 A.L.R.2d 687 § 3.

of the sentence); *Ex parte Hill*, 86 Okla. Crim. 318, 192 P.2d 849 (1948) (where defendant was sentenced and no commitment was issued for nearly four years, the court held that where the punishment is imprisonment the sentence may be satisfied only by the suffering of the actual imprisonment imposed, even though the defendant was a resident of the county, was listed in the phone book, operated a business, and had occasion to be in the courthouse at various times on business during the time period between the issuance of the mandate and the date of his confinement); *Ex parte Riggert*, 33 Okla. 303, 125 P. 485 (1912) (where, through no fault of defendant, six months had passed after defendant's appeal was dismissed, the court held that the imprisonment was legal, since the expiration of time without imprisonment was in no sense an execution of the sentence); *Ex parte Eldridge*, 3 Okla.Crim. 499, 106 P. 980 (1910) (where there was no statutory provision to the contrary, a defendant's judgment could only be satisfied by imprisonment); *Riggs v. Sutton*, 113 Neb. 556, 203 N.W. 999 (1925) (concluding that in the absence of a statute fixing the time when a sentence of imprisonment in a criminal action shall begin, it should not begin until a defendant is taken into custody; the time for executing a sentence of imprisonment is not an essential element of the sentence, rather, the essential part of the sentence is the punishment, including the time and amount thereof); *State v. Cockerham*, 24 N.C. 204 (1842) (where defendant was sentenced, entered his recognizance to appear for imprisonment at a specified time, but was not imprisoned when that date arrived, the court, while recognizing that defendant did not escape and was at large for seven months, held that the time at which a sentence shall be carried into execution forms no part of the judgment of the court; the judgment is the penalty of the law).

More recently, the United States Court of Appeals for the Ninth Circuit recognized that, "under common law a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed." *United States v. Martinez*, 837 F.2d 861, 864 (9th Cir.1988). *See United States v. Vann*, 207 F.Supp. 108, 113 (E.D.N.Y.1962) ("where the court's judgment is that the defendant be imprisoned for a certain term and for any reason, other than death or remission of sentence, time elapses without the imprisonment being endured, the sentence remains valid and subsisting in its entirety."). As discussed in *Martinez*, however, more current cases examine the totality of the circumstances surrounding the delay in execution of sentence. *Martinez*, 837 F.2d at 864. Specifically, in cases dealing with delay in execution of sentencing, federal courts have examined alleged due process violations under the theories of waiver or estoppel. *Id.* (citing *Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir.1984)).

Addressing the waiver theory, the *Martinez* court declared that the government waives the right to incarcerate only "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Martinez*, 837 F.2d at 864 (quoting *Green*, 732 F.2d at 1399). Under the estoppel theory, the *Martinez* court identified a four-part test requiring the following: the party to be estopped must know the facts; he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; the party asserting the estoppel must be ignorant of the facts; and that party must rely on the former's conduct to his injury. *Martinez*, 837 F.2d at 865 (citing *Green*, 732 F.2d at 1399).

In addition to noting the waiver and estoppel exceptions to the common law rule, which serve to discharge a defendant from sentence, *Martinez* and *Green* recognized an additional exception/trend, specifically, the doctrine of "credit for time spent erroneously at liberty." [5]

---

5. *See* Gabriel J. Chin, *Getting Out of Jail Free: Sentence Credit for Periods of Mistaken Liberty*, 45 Cath. U.L.Rev. 403, 404–405 (Winter, 1996) (noting that, in recent decades, to alleviate the draco-nian effect of the traditional rule, most courts have recognized the doctrine of credit for time erroneously at liberty, *i.e.*, a defendant mistakenly released for a short period of time or with a

Under the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own. *See Green,* 732 F.2d at 1400; *Smith v. Swope,* 91 F.2d 260, 262 (9th Cir.1937); *[White v.]Pearlman,* 42 F.2d 788, 789 (10th Cir.1930)

*Martinez,* 837 F.2d at 865.[6] *See Green, supra* (the inadvertence of a marshal in failing to place a detainer on defendant amounted to mere negligence; it did not amount to violation of defendant's due process rights and, thus, did not constitute either waiver or estoppel; nevertheless, defendant was entitled

to credit for time at liberty because he was released through the inadvertence of government agents through no fault of his own).[7]

Citing to both *Martinez* and *Green,* Blair asks this court to apply the doctrine of credit for time erroneously at liberty[8] or, in the alternative, find that the principles of waiver and estoppel bar enforcement of his sentence altogether. We decline to grant either of Blair's requests for relief.

▇ We note that the doctrine of credit for time spent erroneously at liberty based on simple or mere negligence, as applied under the circumstances herein, presents an issue of first impression in Pennsylvania; we are not bound by other jurisdictions' application of this doctrine.[9] This case prompts us to recognize the necessity for a definitive

---

lesser degree of governmental fault will be granted day-for-day credit; also noting that where the government's error amounts to waiver or estoppel, the convict will be granted absolute discharge).

6. While *Martinez* discussed this doctrine, it did not decide its applicability, finding the issue premature.

7. One of the early leading cases on credit for time at liberty is *White v. Pearlman,* 42 F.2d 788 (10th Cir.1930). In *White,* a warden mistakenly believed a prisoner was under a three year rather than a five year sentence. Even though the prisoner called attention to the mistake, he was released, only to be reincarcerated two years later to serve the rest of his sentence. The court held that a prisoner could not be required to serve a sentence in installments, and that where a prisoner is discharged from a penal institution, through no fault of his own, the sentence continues to run while he is at liberty, *Id.* at 789. Another early, oft cited case dealing with credit for time at liberty is *Smith v. Swope,* 91 F.2d 260 (9th Cir.1937), which seems to imply that the doctrine of credit for time at liberty was designed to limit the power of ministerial officers. There, a prisoner was held to be entitled to credit from the time the court ordered him to begin serving his sentence "forthwith," despite the marshall's failure to execute the court's order. The court noted that the prisoner is entitled to serve his time promptly if such is the judgment imposed, and must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment even if, without his fault, the marshal neglects to place him in the proper custody. *Id.* at 262. Otherwise, the court reasoned, the result would be to grant the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. "A prisoner sentenced to one

year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him." *Id.*

8. Interestingly, we note that *Martinez* also states the following:

Traditionally, the doctrine of credit for time at liberty has only been applied where a convicted person has served some part of his sentence and then been erroneously released. It is immaterial whether the convicted person has served one day or ten years of his sentence; if he is erroneously released thereafter, he is entitled to full day-for-day credit for the time he was at liberty. We express no opinion whether a distinction between serving one day and serving no time at all justifies a conclusion that credit be given for time erroneously at liberty.

*Martinez,* 837 F.2d at 865 (citations omitted). See *United States v. Nickens,* 856 F.Supp. 72 (D.P.R.1994) (defendant was not "erroneously released," but, rather, was released on bond pending appeal and remained free on bond for over one year; court chose not to apply doctrine for time erroneously at liberty).

9. *See Nickens, supra* (choosing not to follow the doctrine of credit for time spent erroneously at liberty based on simple or mere negligence and concluding that, even if the court did recognize the doctrine, it did not apply); *see also Pugh v. State of Mississippi,* 563 So.2d 601, 604 (Miss.1990) ("this Court declines at this point in time to adopt or apply a blanket doctrine under which every erroneously-released inmate is entitled to credit for his time at liberty."); *Brown v. Brittain,* 773 P.2d 570, 574 (Colo.1989) (declining to categorize petitioner's rationale "into a blanket rule under which every prisoner mistakenly released from confinement is entitled to credit for time he remains free.").

rule of criminal procedure addressing the dilemma presented by the circumstances herein. A directive by the Pennsylvania Supreme Court is warranted in order to clarify the time period in which a sentenced defendant's incarceration term should commence, including, perhaps, the ramifications of taking an appeal and being free on appeal bond. In the absence of such authority, however, in this case we choose not to apply an exception to the common law rule that a person erroneously at liberty must serve the **full** sentence imposed after the error is discovered.

We acknowledge the fact that Blair failed to be incarcerated because of an error not his own. Further, Blair did nothing to hinder the order to commence service of sentence; he did not flee, did not conceal his identity, lived and worked in the Western Pennsylvania area, and had attended the Community College of Allegheny County.[10] Blair claims he did not have knowledge, during the time period in question, that his judgment of sentence had been affirmed by this court. While we sympathize with Blair's plight, we conclude, however, that these factors do not and cannot nullify any portion of Blair's sentence of imprisonment. We will not allow the court system's inadvertent error to cancel any part of Blair's punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of an unintended delay or negligent error attributable to the government. The fact remains that, regardless of the delay, Blair has not served the time he was so ordered to serve. Blair's "erroneous time at liberty" was spent, by his own admission, engaging in the normal activities of a member of free society. Considering Blair's accomplishments in maintaining employment and pursuing educational goals, the argument could be made that he actually benefitted from his time at liberty. Indeed, it is difficult to accept Blair's plea of "enormous prejudice" in light of these circumstances.

In *Clark v. Floyd,* 80 F.3d 371 (9th Cir. 1996), the 9th Circuit found that appellant was entitled to credit toward his federal sentence from November 27, 1989, the date on which he was erroneously released from a Montana prison rather than being delivered to the custody of federal marshals, to August 18, 1992, the date on which he was actually taken into federal custody to begin serving his federal sentence.[11] In a concurring and dissenting opinion, the Honorable Ferdinand F. Fernandez espoused persuasive and pertinent observations with regard to the appellant's receipt of credit:

[Appellant] now asserts that he should be credited for the time he was at liberty between his release from the Montana State Prison and his arrest by United States marshals. He suggests that he was confused and somehow just did not understand that the federal authorities might still expect him to serve his 15 year sentence for federal crimes. Of course, he never did ask or otherwise try to find out; he just took advantage of his freedom. I am far from impressed by his claim that fairness requires that he be given the credit he seeks.

\* \* \* \*

I fail to see, and Clark does not explain, why the mere fact of his improper release by Montana state authorities means that he can avoid service of his sentence for his

---

10. The law is not uniform with respect to whether or not a prisoner's conduct after he is mistakenly released is a relevant consideration in determining credit for time at liberty. *See Brown,* 773 P.2d at 574–75 (listing cases).

11. In making this determination, the court in *Clark* rejected the district court's conclusion that Clark was not entitled to credit; it specifically rejected the district court's conclusion that *Martinez, supra,* was dispositive of Clark's case in light of *Martinez'* statement that the doctrine of credit for time at liberty has traditionally only been applied where a convicted person has served some part of his sentence and then been erroneously released. Instead, the federal court of appeals found that Clark was entitled to the benefit of the ruling in *Smith v. Swope,* 91 F.2d 260 (9th Cir.1937) (holding that a prisoner was entitled to credit from the time the court ordered him to begin serving his sentence "forthwith," despite the marshal's failure to execute the court's order; the court did not concern itself with the fact that the prisoner had not served any part of his federal sentence prior to the time for which he was given credit).

federal crimes. I do agree that the government cannot play cat and mouse with prisoners. I also agree that it is sad when someone begins to make a fresh start and is then arrested for his past sins. What I disagree with is allowing criminals, like Clark, to take no responsibility for themselves when state authorities err and the federal authorities do not.... Clark should not benefit. It is he who earned the 15 year punishment for his drug manufacturing. He should not be deprived of his desserts.... [He] ... has now given a new meaning to carpe diem. He has seized two years and nine months.

*Clark,* 80 F.3d at 375–76 (Fernandez, J., concurring and dissenting).[12]

As mentioned previously, there are no Pennsylvania cases that have specifically applied the doctrine of erroneous time at liberty as it has been examined herein. Blair does, however, cite two Pennsylvania cases awarding credit to defendants under different circumstances. We find these cases inapposite and readily distinguishable from the case at hand. In *Commonwealth v. Kriston,* 527 Pa. 90, 588 A.2d 898 (1991), a defendant who had been given a 30–day mandatory sentence for a second DUI conviction was erroneously transferred into a home monitoring program. Before authorities that time spent in the program would count towards his minimum sentence; this was actually an erroneous understanding by prison authorities. The court decided that the defendant should be given credit for the time he served in this program. In so deciding, the court relied on the reasoning of the second case cited by Blair, *Jacobs v. Robinson,* 49 Pa. Commw. 194, 410 A.2d 959 (1980). In *Jacobs,* a convict who had been serving a prison term was inadvertently released from prison due to a clerical error in recording his sen-

tence. Upon release, he came under the supervision of probation authorities. When the error was discovered, the convict was taken back into custody. The Commonwealth Court held that his sentence must be credited, reasoning that a prisoner has a right to serve his sentence continuously rather than in installments. The court also noted that the release was not attributable to any wrongdoing by the prisoner.

Here, Blair cannot claim that certain assurances were made to him, *Kriston, supra,* or that this right to serve his sentence continuously, and not in installments, was abridged. *Jacobs, supra.* In contrast to *Jacobs,* Blair was not erroneously released from prison; he had not yet begun to serve his sentence. This case does not, therefore, implicate the concern *Jacobs* sought to alleviate, *i.e.,* the right to serve a continuous sentence. Furthermore, the time periods for which the defendants in these cases were credited were not spent at "liberty" within that term's common usage. In *Kriston,* the appellant spent time in a home monitoring program,[13] and in *Jacobs,* the prisoner was released under the supervising authority of the probation department. In quite a different set of circumstances, Blair was not called to begin serving his sentence and, instead, remained completely free for over two years. Thus, to the extent, if any, that these cases can be categorized under the doctrine of credit for time erroneously at liberty, they provide little guidance with respect to the instant circumstances. We will not, therefore, give credence to Blair's assertions that he is entitled to credit for the delay in the execution of his sentence.

As we have determined that Blair's sentence should not be credited, it follows that we are not persuaded that Blair's prison sentence should go unserved.[14] There is cer-

---

12. *See* Chin, *Getting Out of Jail Free,* 45 Cath. U.L.Rev. at 412 (noting that an important counterbalance to the notion of fairness to defendants is the principle that "[s]entences imposed in accordance with the legal process should be served in full.... [C]riminals should not be relieved of their debts to society.").

13. Under this program, appellant was required to wear an electronic device that would sound an alarm if he ventured more than one hundred feet

from his telephone. He was also subject to the possibilities of unannounced visits from prison officials and random drug and alcohol testing. *Kriston, supra.*

14. *See* Chin, *Getting Out of Jail Free,* 45 Cath. U.L.Rev. at 418 (the body of decisions granting absolute discharge are similar to the "credit" cases because they draw on the same principles of fairness; the group is distinct, however, in that it relies on the due process clause of the

tainly no justification for Blair's judgment of sentence to be discharged altogether. Blair asserts that his due process rights have been violated, specifically, his right to a "speedy trial," and, further, that principles of waiver and estoppel bar enforcement of his sentence.

█ Blair does not elaborate on his assertion that the waiver and estoppel doctrines serve to obliterate the need for him to serve his sentence. Even had Blair expounded upon his waiver and estoppel allegations, we are not confronted here with conduct so "affirmatively improper or grossly negligent" by the government that due process is violated and the execution of sentence is, therefore, waived. *See Martinez, supra* (failure to order the execution of sentence for over seven years was not so affirmatively wrong or grossly negligent that fundamental fairness was violated); *Green, supra* (marshal's inadvertence in failing to place detainer on defendant did not meet the necessary standard of misconduct to waive the government's right to reincarcerate the defendant). Nor do we find that Blair should be discharged under an estoppel theory, as the government's actions here did not amount to affirmative misconduct. *See Martinez, supra* (finding that defendant did not meet the estoppel test because the government's actions did not amount to affirmative misconduct and defendant was not ignorant of the facts surrounding the delay in execution; all prongs of the equitable estoppel test must be met); *see also Jaa v. United States I.N.S.,* 779 F.2d 569, 572 (9th Cir.1986) (affirmative misconduct must be more than negligence; mere unexplained delay does not reflect misconduct).

█ In Blair's primary argument for complete discharge, he analogizes his situation to a right to speedy trial violation. He contends that "his right to a speedy trial, pursuant to the Pennsylvania and United States Constitutions, has been violated by the Court's failure to comply with Rule 1763 of the Pennsylvania Rules of Appellate Procedure." Specifically, Blair notes that the

court's failure to require him to begin serving his sentence for over two years and four months is a sufficient time period to trigger a speedy trial or, more appropriately, a "speedy incarceration" inquiry. It is well settled that the same analysis used to examine speedy trial claims which arise pre-trial, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is used to examine due process claims which arise post-sentencing. *See Commonwealth v. Glass,* 526 Pa. 329, 586 A.2d 369 (1991) (asserted right to promptness in appeals is framed in terms of due process rather than the right to speedy trial; the same factors are considered in analyzing both claims); *Commonwealth v. McCord,* 435 Pa.Super. 1, 644 A.2d 1206 (1994) (applicable considerations for speedy trial claims are applicable to due process claims); *Commonwealth v. Bischof,* 420 Pa.Super. 115, 616 A.2d 6 (1992) (modified *Barker* analysis used to inspect right to speedy parole revocation hearing); *see also Heiser v. Ryan,* 15 F.3d 299 (3d Cir.1994) (*Barker* analysis used in examining whether a delay in post-verdict process, in this case an attack on a plea, violates the due process clause); *Burkett v. Cunningham,* 826 F.2d 1208 (3d Cir.1987) (due process clause protects against delays in appeals as of right).

In applying the *Barker* analysis, we must first determine whether the delay itself is sufficient to trigger further inquiry; if it does, the reason for the delay is examined, the defendant's assertion of his or her rights is examined, and, finally, any resulting prejudice to the defendant is considered. *See Barker, supra; see also Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981); *Commonwealth v. Dehoniesto,* 425 Pa.Super. 83, 624 A.2d 156 (1993).

█ The delay in the instant case does trigger further inquiry. *Cf. Glass, supra* (fifty-one month delay between conviction and sentencing is sufficient to trigger speedy trial analysis). As to the second factor, it has been stated that a deliberate attempt to delay should be weighed heavily against the

Fourteenth Amendment); *see also United States v. Davis,* 801 F.2d 754, 757 (5th Cir.1986) (explaining that "due process requires a state to

seek completion of a sentence in a timely fashion").

government while "[a] more neutral reason such as negligence .... should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Commonwealth v. Glover,* 500 Pa. 524, 528, 458 A.2d 935, 938–39 (1983). The delay in the instant case, according to the trial court, was not deliberate. Rather, the trial court's lack of knowledge that Blair was not serving his sentence was caused by the fact that Blair's bond papers were missing from the record. Such negligence will be weighed less heavily. Our consideration of the third factor reveals that Blair asserted his due process right only after the trial court ordered him to appear for sentencing. While we question Blair's assertion that he did not know that his sentence had been affirmed, we must assume that this is why he refrained from asserting any claim before that time. *See Glass, supra* (defendant's failure to seek imposition of sentence during delay period weighted against speedy trial claim). Finally, we must consider the prejudice suffered by Blair. Those cases that have examined due process claims arising **post**-sentence have determined that there is a significant difference with respect to the prejudice prong of the *Barker* test. *See Commonwealth v. Greer,* 382 Pa.Super. 127, 138–40, 554 A.2d 980, 986 (1989). The traditional reasons for finding prejudice in the context of a speedy trial claim, *i.e.,* to prevent oppressive pre-trial incarceration, minimize the accused's anxiety, and limit the possibility that the defense will be prejudiced by lost or missing witnesses, *Glover, supra,* are clearly absent from the instant case. We have previously discussed our reasons for finding that Blair's prejudice claim is untenable. Considering all four factors, we are convinced, especially in light of Blair's lack of prejudice, that his due process rights have not been violated. We, therefore, find no merit to his claim that he be excused from serving his sentence.

Affirmed.