Winfred DAVIS, Jr., Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 14, 2003.

Decided Jan. 15, 2004.

Howard Goldman, Philadelphia, for petitioner.

Tara Patterson, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Winfred Davis, Jr. (Davis) petitions for review of the February 18, 2003, order of the Pennsylvania Board of Probation and Parole (Board), which denied Davis' administrative appeal from the Board's decision to revoke his parole and to recommit him to serve twenty-four months backtime as a convicted parole violator (CPV).

On February 14, 1977, Davis received a sentence of two to ten years for robbery. (C.R. at 1.) Davis was released on parole in February of 1980 to an approved plan in New Jersey. (C.R. at 3.) In June of 1981, New Jersey police arrested Davis and charged him with two counts of robbery. (C.R. at 10.) On September 22, 1981, Davis pled guilty in a New Jersey court to two counts of second-degree felony robbery. Davis received a fifteen-to-thirty year sentence. (C.R. at 10, 13, 26–27, 65, 67.) On January 28, 1982, the Board issued a detainer warrant. (C.R. at 6.)

By letter dated April 2, 1986, Davis informed the Board's Director of Interstate Services (Director) that he was incarcerated at Trenton State Prison and was aware of the January 28, 1982, detainer warrant. Davis asked the Director if he "could help me take care of this matter [the January 28, 1982, detainer] and or send me information concerning Intersta[te] Parole Detainers." (C.R. at 70.) By letter dated April 7, 1986, the Director informed Davis that, upon his release from the New Jersey state prison, Davis would be returned to Pennsylvania for a hearing and a determination on Davis' parole violation. (C.R. at 71.)

By letter dated October 5, 1994, Davis inquired of the Director as to "the exact status of this [January 28, 1982] detainer ... as well as what is required of me to have this parole violation detainer matter taken care of as soon and as expeditiously as possible." (C.R. at 72.) By letter dated October 18, 1994, the Director informed Davis that, because Davis was confined in New Jersey, the Board had no authority over him. The Director further explained that, because the January 28, 1982, detainer was related to a parole violation, the Interstate Agreement on Detainers did not apply.[1] (C.R. at 75.) The Director suggested that Davis write to him approximately three months prior to his scheduled release date, at which time the Director would present Davis' case to the Board. (C.R. at 76.)

By letter dated May 30, 1996, Davis informed the Director that he still seeks a speedy resolution to the Pennsylvania parole violation detainer and desires to have the matter put before the Board as soon as possible. Davis stated, "I hope that your offer of me contacting you when I am approximately 3 months prior to my scheduled release date still stands." (C.R. at 80.) By letter dated July 25, 1996, the Director reaffirmed that Davis should write to him approximately three months prior to his release. (C.R. at 81.)

By letter dated October 12, 1999, Davis informed the Director that Davis was

---

1. The Interstate Agreement on Detainers encourages "the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Section 9101 of the Judicial Code, 42 Pa.C.S. § 9101.

scheduled to be released in approximately three months. (C.R. at 82.) Davis reminded the Director, "I have been attempting to have this matter [the January 28, 1982, detainer warrant] resolved for over 17½ years now." (C.R. at 83.) However, the letter was returned to Davis because the Board had moved its offices. (C.R. at 39–40.) With the help of a family member, Davis obtained what he hoped was the Board's correct address. (C.R. at 84.) By letter dated October 29, 1999, Davis once again informed the Director of his pending release and sought an expeditious disposition of the January 28, 1982, detainer warrant. (C.R. at 84–85.) This letter was *not* returned to Davis. (C.R. at 39.)

On January 21, 2000, New Jersey authorities released Davis from prison. (C.R. at 39.) Because his October 29, 1999, letter to the Director was not returned as undeliverable, Davis expected the Board to take him into custody and return him to Pennsylvania for a parole violation hearing, but the Board did not appear. When Davis was released to the street, Davis asked New Jersey authorities about the January 28, 1982, detainer warrant, but they could not find the detainer in Davis' file. (C.R. at 39.)

After his release, Davis found work as a telemarketer in New Jersey. Shortly afterwards, while Davis was visiting with family members in Atlanta, he was encouraged to relocate there. In April of 2000, Davis moved to Atlanta. Davis initially found work at a temp agency, and, in May of 2000, he began working full-time for an office installation firm. (C.R. at 50, 52, 90.)

In October of 2000, Davis wrote another letter to the Director. Like the previous letter, this letter was *not* returned as undeliverable. (C.R. at 46–47.) Davis indicated that he had been released from pris-

on in New Jersey, and he inquired about the January 28, 1982, detainer warrant. Davis stated that he was gainfully employed and planned to marry. He also offered to voluntarily appear for a parole hearing and expressed his hope that he would be permitted to continue his "fresh start." (C.R. at 87–88.)

In November of 2001, to supplement his income, Davis began a second job working part-time at a mall. (C.R. at 52, 89.) On April 18, 2002, Davis married a woman from New Jersey, and the two decided to return to her home state. (C.R. at 50–51.) On May 29, 2002, while transporting personal property between Atlanta and New Jersey, Davis stopped to change a flat tire in North Carolina. A police officer appeared and offered assistance. The police officer also performed a background check, which revealed the January 28, 1982, detainer warrant lodged against Davis. (C.R. at 52.) The officer arrested Davis, and, on June 28, 2002, Davis was returned to Pennsylvania for a parole violation hearing. (C.R. at 10.)

At the July 26, 2002, parole hearing, Davis acknowledged his two convictions in New Jersey, offered into evidence his correspondence with the Director regarding the January 28, 1982, detainer warrant and testified about his successful adjustment to society. Davis argued that, because his release was through no fault of his own, the Board should permit him to remain on parole rather than disrupt his new life by recommitting him as a CPV. Despite Davis' request, the Board's decision, mailed on January 6, 2003, was to recommit Davis as a CPV to serve twenty-four months backtime. (C.R. at 92.)

Davis filed an administrative appeal, which the Board denied on the grounds that twenty-four months backtime is within the presumptive range for the

two robbery convictions. (C.R. at 112.) Davis now petitions this court for review of the Board's decision.[2]

■ Davis argues that the Board abused its discretion in deciding to recommit him as a CPV instead of determining that, in his case, recommitment should not occur.

The Board's regulation at 37 Pa.Code § 75.1 provides, in pertinent part, as follows:

(a) Presumptive ranges of parole backtime to be served will be utilized *if* a parolee is convicted of a new criminal offense while on parole *and* the Board orders recommitment as a convicted parole violator after the appropriate revocation hearing.

(b) The presumptive ranges of parole backtime are intended to structure the discretion of the Board while allowing for individual circumstances in terms of *mitigation and aggravation* to be considered in the final decision.

(c) *The Board may* deviate from the presumptive range or *determine that recommitment should not occur*, provided written justification is given.

37 Pa.Code § 75.1 (emphasis added). Thus, the Board's threshold decision is whether to recommit the CPV. If the Board determines that recommitment should *not* occur, the Board will prepare a written justification. If the Board determines that recommitment should occur, the Board will consider mitigating or aggravating circumstances and recommit the CPV for a period of time within the applicable presumptive range. If the Board decides to deviate from the presumptive range, the Board will prepare a written justification.

In this case, the Board decided to recommit Davis. The Board's decision states only one reason: "Convictions in a court of record established." (R.R. at 2.) Thus, the Board believed that, although Davis had served more than eighteen years in a New Jersey prison for robbery and had successfully returned to society, Davis should serve some backtime as punishment for committing two second-degree felony robberies while on parole from a sentence for robbery. We cannot say that this decision is manifestly unreasonable; therefore, we conclude that the Board did not abuse its discretion in deciding to recommit Davis.[3]

■ We also conclude that the Board did not abuse its discretion in imposing twenty-four months backtime. Where a CPV has multiple criminal convictions, the Board has discretion to recommit the CPV for each separate criminal conviction. *Perry v. Pennsylvania Board of Probation and Parole*, 86 Pa.Cmwlth. 548, 485 A.2d 1231 (1984). This court will not interfere with the Board's discretion where the parole violations are supported by substantial

2. Our scope of review is limited to determining whether the Board's adjudication is supported by substantial evidence, whether an error of law has been committed or whether the parolee's constitutional rights have been violated. *Moroz v. Pennsylvania Board of Probation and Parole*, 660 A.2d 131 (Pa.Cmwlth. 1995). The revocation of parole is a function of administrative discretion; this court will interfere with the Board's exercise of its administrative discretion only where it has been abused or exercised in an arbitrary or capricious manner. *Id.*

3. Our supreme court has stated that discretion is abused when the evidence of record shows that: (1) in reaching a conclusion, the law is overridden or misapplied; (2) the judgment exercised is manifestly unreasonable; or (3) the judgment is the result of partiality, prejudice, bias or ill-will. *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830 (2002).

evidence[4] and the amount of backtime imposed for each offense is within the applicable presumptive range. *Epps v. Pennsylvania Board of Probation and Parole,* 129 Pa.Cmwlth. 240, 565 A.2d 214 (1989). The presumptive backtime range for second-degree felony robbery is twenty-four to forty months. 37 Pa.Code § 75.2. Here, the Board could have recommitted Davis for up to eighty months backtime based on the two robbery convictions; however, because of mitigating circumstances, the Board decided to recommit Davis for only one of the robbery convictions to serve the minimum amount of backtime.

Accordingly, we affirm.[5]

### ORDER

AND NOW, this 15th day of January, 2004, the order of the Pennsylvania Board of Probation and Parole, dated February 18, 2003, is hereby affirmed.

4. Davis asserts that the violations are not supported by substantial evidence in this case. (Davis' brief at 6.) We disagree. The parole violations, i.e., the robbery convictions, are supported by the New Jersey conviction reports and Davis' own testimony.

5. Given the seeming inequities in this case, the Board might have decided *not* to recommit Davis; indeed, there is no evidence in the record indicating that Davis required further rehabilitation. Although we are constrained to affirm the Board's decision, it would not be impermissible for the Board to reconsider the matter, and we urge the Board to do so.

We also note that, under the facts of this case, the Board could have applied the "credit for time at liberty doctrine." *See Commonwealth v. Blair,* 699 A.2d 738 (Pa.Super.1997).

[I]n certain factual situations elementary principles of due process demand that a mistakenly released prisoner receives credit against his prison term for the time he has been erroneously at large. In these cases due process is interpreted to mean fundamental fairness and fair play and governs situations in which the mistakenly released prisoner peacefully reestablishes himself as a productive member of the community only to have his good works destroyed by reincarceration after many years.

*Brown v. Brittain,* 773 P.2d 570 (Colo.1989). Thus, where, as here, a prisoner (1) is released without fault on his part, (2) calls attention to the mistake and is brushed aside, and (3) does not violate conditions of parole while at liberty, the prisoner's sentence continues to run while he is at liberty. *White v. Pearlman,* 42 F.2d 788 (10th Cir.1930).